UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

DENNIS AUNDRE WATERS,

    Plaintiff,

v.

JEFF PREMO, B. LANEY, and
LT. YANCEY,

    Defendants.

Case No. 6:17-cv-00658-YY

OPINION AND ORDER

YOU, Magistrate Judge:

    Plaintiff Dennis Waters ("Waters"), proceeding *pro se* and *in forma pauperis*, has filed a civil rights complaint stemming from his placement in administrative segregation at the Oregon State Penitentiary ("OSP"). He brings this action against Jeff Premo, Superintendent of the Oregon Department of Corrections ("ODOC"), B. Laney, Assistant Superintendent, and Lieutenant Yancey, collectively "defendants." Waters alleges: (1) racial discrimination under 42 U.S.C. §§ 1981 and 1982, (2) civil rights conspiracy under 42 U.S.C. §§ 1985 and 1986, and (3) violations of the Fourteenth and Eighth Amendments pursuant to 42 U.S.C. § 1983. Compl. 4, ECF #1. Waters seeks: (1) to be removed from administrative segregation, (2) to have his wife placed back on his visiting list, (3) to be placed back on all of his programs, and (4) to have

defendants held liable for the death of another inmate. *Id.* at 6. Additionally, in his response, Waters contends that he is entitled to monetary damages of $2,000 for each day he spent in administrative segregation. Resp. 2, 4, ECF #46.

Defendants have moved for summary judgment. For the reasons discussed below, defendants' motion is granted.[1]

## BACKGROUND

Waters was admitted to the custody of ODOC on February 10, 1997, to begin serving a life sentence. Booher Decl. ¶ 3, ECF #44; Miles Decl. ¶ 3, ECF #41. He is currently housed at Eastern Oregon Correction Institution ("EOCI"). Miles Decl. ¶ 3, ECF #41.

On July 18, 2016, Waters was housed at OSP. Booher Decl. ¶ 5, ECF #44. He became the subject of an investigation by the State Police and Special Investigations Unit ("SIU") involving the introduction of controlled substances into OSP. ECF #48, at 3. The controlled substances were linked to numerous unscheduled inmate trips to the emergency room and possibly an inmate death. *Id.* Lieutenant Yancey requested that Waters be housed in administrative segregation for 180 days to prevent his interference with the ongoing investigation. *Id.* Superintendent Premo approved Lieutenant Yancey's request on August 5, 2016. *Id.* In approving the request, Superintendent Premo wrote "60" days on the line designating the length of placement. *Id.* at 5. However, two days later, Superintendent Premo corrected this "oversight" by email, noting that the 60 days should be changed to 180 days. *Id.* at 6.

---

[1] All parties have consented to allow a magistrate judge to enter final orders and judgment in this case in accordance with FRCP 73 and 28 U.S.C. § 636(c).

2 – OPINION AND ORDER

Waters claims that, because he had let "people know [he] was going to sue OSP," ODOC employees "decided to use their power and punish [him] by" placing him in administrative segregation. Compl. 5, ECF #1. He claims that Lieutenant Yancey and Jerry Plante ("Plante") "lied to" Superintendent Premo and Assistant Superintendent Laney "to get them to place [him] in" administrative segregation "and remove [his] wife from [his] visiting list." *Id.* According to Waters, ODOC employees "snatched all black inmates over a white inmate's death." *Id.*

On August 8, 2016, Waters received a Notice of Hearing with an attached copy of the pertinent administrative rules, OAR 291-046-005, *et. seq.* ECF #48, at 11. Waters' hearing took place on August 11, 2016. *Id.* Hearings Officer Nofziger conducted the hearing, and recommended that Waters be assigned to administrative segregation for a period of up to 180 days or until placement was no longer necessary. *Id.* at 3-4.

On November 6, 2016, while in administrative segregation, Waters was charged with additional misconduct, specifically racketeering for conspiring to pay to have another inmate assaulted. Galemore Decl. ¶ 4, ECF #43. This extended his time in administrative segregation and resulted in his transfer to the Intensive Management Unit ("IMU") at Snake River Correctional Institution ("SRCI"), where he was housed between January 25, 2017, and July 18, 2017. Booher Decl. ¶ 5, ECF #44.

On July 18, 2017, Waters was housed in general population at SRCI until April 4, 2018, when he was returned to EOCI. Galemore Decl. ¶ 5, ECF #43; Miles Decl. ¶ 5, ECF #41. At the time the motion for summary judgment was filed, Waters was no longer housed in administrative segregation. Miles Decl. ¶ 5, ECF #41.

Water's wife, Kelly Waters ("Kelly"), had her visiting privileges suspended in August 2016 while the SIU investigation was pending. Lenex Decl. ¶ 3, ECF #42; ECF #42, at 4.

Kelly's visiting privileges were reinstated on June 5, 2017. ECF #42, at 3. After her privileges were restored, Kelly resumed visitation with Waters. Galemore Decl. ¶ 6, ECF #43. She last visited Waters just several days before the motion for summary judgment was filed, and remains on Waters' visiting list at EOCI. Miles Decl., Ex. 2, ECF #41.

**STANDARDS**

**I.      Summary Judgment**

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a). Summary judgment is not proper if material factual issues exist for trial. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

The moving party bears the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "When judging the evidence at the summary judgment stage, the district court is not to make credibility determinations or weigh conflicting evidence, and is required to draw all inferences in a light most favorable to the nonmoving party." *Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990). Where different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovich v. Life Ins. Co. of North America*, 638 F.2d 136, 140 (9th Cir. 1981).

However, deference to the nonmoving party has limits; a party asserting that a fact cannot be true or is genuinely disputed must support the assertion with admissible evidence. FRCP 56(c). "[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotation marks omitted). Rule 56(c) provides that "sufficient evidence supporting the claimed

factual dispute be shown" to require a fact finder to resolve the parties' differing versions of the truth at trial. *Id.* at 249 (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968)). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim on which the nonmoving party has the burden of proof. *Celotex*, 477 U.S. at 323. Thus, where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II. Civil Rights Act

The Civil Rights Act, 42 U.S.C. § 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal citation omitted). Section 1983 liability "arises only upon a showing of personal participation by the defendant," acting under color of state law, that deprived the plaintiff of a constitutional or federal statutory right. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

To state a civil rights claim, a plaintiff must set forth the specific factual basis upon which he claims each defendant is liable. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). There is no *respondeat superior* liability under § 1983. *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 691-95 (1978) (concluding that the supervisor of someone who allegedly violated a plaintiff's constitutional rights is not made liable for the violation by virtue of that role). A

supervisor is liable in his or her individual capacity for constitutional violations of a subordinate only "if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor*, 880 F.2d at 1045.

Federal courts hold a *pro se* litigant's pleadings to "less stringent standards than formal pleadings drafted by lawyers." *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987); *see Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (*per curiam*) (a document filed *pro se* "is to be liberally construed"; a plaintiff need only give the defendant fair notice of the claim and the grounds on which it rests) (citation omitted). "However, a liberal interpretation of a civil rights compliant may not supply essential elements of the claim that were not initially pled." *Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982). This does not entitle *pro se* pleadings to receive the benefit of every conceivable doubt, but only to reasonable factual inferences in the plaintiff's favor. *McKinney v. De Bord*, 507 F.2d 501, 504 (9th Cir. 1974).

## DISCUSSION

### I. Administrative Segregation

Waters complains that he was wrongfully placed in administrative segregation for 180 days. Compl. 4-5, ECF #1. He further contends that Superintendent Premo signed an "ad-seg paper for [him] to be only held for 60 days," but he was held for an additional 120 days "illegally." Resp. 1-2, ECF #46. He seeks monetary damages of $2,000 for each day he was held in administrative segregation. *Id*. at 2.

Prisoners are entitled to certain due process protections when subject to disciplinary sanctions. *Wolff v. McDonnell*, 418 U.S. 539, 564-71 (1974). However, for an inmate's segregation to constitute a deprivation of due process, the inmate must establish the segregation "present[s] the type of atypical, significant deprivation in which a State might conceivably create

a liberty interest." *Sandin v. Connor*, 515 U.S. 472, 486 (1995). Assignment to administrative segregation without other factors present does not implicate a protected liberty interest. *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003); *Resnick v. Hayes*, 213 F.3d 443, 448 (9th Cir. 2000) (prisoner has no cognizable due-process claim because he has no liberty interest in being free from disciplinary segregation).

The court considers three factors in determining whether a condition is atypical and significant:

> (1) whether the challenged condition "mirrored those conditions imposed upon inmates in administrative segregation and protective custody," and thus comported with the prison's discretionary authority; (2) the duration of the condition, and the degree of restraint imposed; and (3) whether the state's action will invariably affect the duration of the prisoner's sentence.

*Sandin*, 515 U.S. at 486-87 (citation omitted).

OAR 291-046-0025, the relevant Oregon administrative rule governing the circumstances under which plaintiff was placed in administrative segregation, provides:

> (1) An inmate may be involuntarily placed in administrative segregation or protective custody for a period not to exceed 30 days by order of the functional unit manager or designee only when he/she has sufficient evidence to believe immediate assignment is necessary to protect the safety, security, and orderly operation of the facility.
>
> (2) An inmate may be involuntarily placed in administrative segregation or protective custody for a period in *excess* of 30 days only when information verified through the hearing process, outlined in these rules, shows the inmate to constitute an immediate and continuing threat to the safety, security, and orderly operation of the facility.
>
> (3) The involuntary administrative housing packet will contain information as outlined in the Department's policy on Administrative Housing (40.3.3).
>
> (4) Each inmate placed in involuntary administrative housing exceeding 30 days will receive a hearing by a hearings officer. The hearing report shall be processed and reviewed by the Institutions Administrator or designee. If the factual allegations support placement in involuntary administrative segregation or protective custody, the packet will be forwarded to the SPM Committee for

> placement. Upon receipt of the administrative housing packet, the SPM
> Committee will review the information and determine which administrative
> housing unit the inmate will be assigned.

(emphasis added). Further, OAR 291-046-0085(2) provides that an assignment to administrative segregation shall not exceed 180 days without due process.

Waters' placement in segregation was not atypical and significant by the standards set out in *Sandin*. Defendants followed the administrative rules applicable to all inmates placed in administrative segregation for more than 30 days. Waters received a hearing by a hearings officer, and the hearings officer's report was reviewed by the assistant director of operations. Moreover, Waters was placed in administrative segregation due to an "immediate and continuing threat to the safety, security, and orderly operation of the facility"; he was the subject of an investigation involving the introduction of controlled substances into OSP, which was linked to numerous inmate trips to the emergency room and possibly an inmate death. ECF #48, at 3. Finally, Waters' placement in administrative segregation did not exceed the 180-day-limitation set forth in the administrative rules and did not affect the duration of his sentence.

Waters alleges that Superintendent Premo sent a letter to the Board of Parole ("Board"), which affected his parole hearing. Resp. 3-4, ECF #46. However, this allegation is not supported by any evidence in the record.

Waters also seeks monetary damages of $2,000 for each day he was held in administrative segregation. Even if Waters was entitled to prevail, he would not be entitled to monetary damages. First, Waters states his intention to seek these monetary damages for the first time in his response. Resp. 2, 4, ECF #46. Waters' complaint makes no mention of these monetary damages, and he has not sought to amend his complaint. *See* Compl. 6, ECF #1. Further, the PLRA allows for damages only upon a showing of physical injury. *See* 42 U.S.C.

§1997e(e) ("no Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility for mental or emotional injury suffered while in custody without a prior showing of physical injury"); *Oliver v. Keller*, 289 F.3d 623 (9th Cir. 2002) (discussing the extent of physical injury necessary to sustain a claim). Waters makes no showing of physical injury in this case.

## II. Activities-Based Programs

Waters alleges that, while he was housed in administrative segregation, he was illegally deprived of activities-based programming. Compl. 6, ECF #1. However, prisoners have no constitutional right to particular prison programs. *Hernandez v. Johnston*, 833 F.2d 1316, 1318-19 (9th Cir. 1987). In any event, Waters was provided programming while housed in both IMU and in general population at SRCI. Galemore Decl. ¶ 7, ECF #43. Additionally, Waters' programming was not impacted by his transfer to EOCI because he was signed up for programs there within a week of his arrival. Miles Decl., Ex. 3, ECF #41.

## III. Visitation

Waters claims it was improper for his wife to be removed from his visitor list. Compl. 5, ECF #1. However, there is no absolute right to prison visitation. *See Dunn v. Castro*, 621 F.3d 1196, 1204 n.4 (9th Cir. 2010) (listing court decisions upholding the denial of visitation to prisoners). Inmates have no constitutional right to "access to a particular visitor." *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 461 (1989); *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996).

Moreover, OAR 291-127-0320(1)(b) and (3) allow for the suspension of visitation under the circumstances presented in this case:

> (1) The superintendent or designee may suspend the inmate's visits with the visitor, or restrict visitation to basic visiting, or remove a visitor from an inmate's approved visiting list if the superintendent or designee determines that:
> . . .
>
> (b) There exists reasonable suspicion that continued visitation between the visitor and the inmate poses a threat to the safety, security, health and good order of the facility, and/or the safety and security of other inmates, staff, visitors, contractors or the community. . . .
>
> (3) The superintendent or designee may temporarily suspend an inmate's visit for 14 days in the event of an on-going investigation. The superintendent or designee shall provide written notification of the suspension to the inmate and the inmate's visitor(s). If at the conclusion of the investigation or 14 days whichever occurs first, the superintendent or designee determines the visitor's status shall be suspended, the notification process specified in section (2) above will begin.

Further still, OAR 291-127-0330(3) provides than "[a]dministrative review will not be provided to visitors for inmate misconduct resulting in disciplinary sanctions imposed upon inmates in accordance with the Department of Corrections rule on Prohibited Inmate Conduct and Processing Disciplinary Actions."

Here, Kelly's visitation rights were suspended during an ongoing investigation into Waters' involvement with controlled substances that were causing other inmates injury and may have caused one inmate's death. Lenex Decl., Ex. 1, at 2, ECF #42. Kelly was properly notified that her visitation was being suspended as required by OAR 291-127-0320(3). The suspension of Kelly's visitation privileges during this investigation and duration of Waters' administrative segregation did not violate Waters' rights in any way.

## IV. Eighth Amendment

Waters also claims his placement and duration in administrative segregation amounted to cruel and unusual punishment, in violation of the Eighth Amendment. Because Waters' placement in administrative segregation was proper, it follows that his time spent in administrative segregation did not amount to cruel and unusual punishment. *Farmer v. Brennan*,

511 U.S. 825, 834 (1994) (holding that Eighth Amendment violations based on prison conditions must demonstrate that prison officials were deliberately indifferent to their health or safety by them to a substantial risk of serious harm).

V.     **Other Civil Rights Claims**

In addition to the above claims, Waters alleges that ODOC employees violated other civil rights statutes. Compl. at 5-8, ECF #1. Because Waters is proceeding *pro se*, this court has liberally construed the pleadings to thoroughly address these claims. They nevertheless lack merit, as discussed below.

A.     **Racial Discrimination, 42 U.S.C. §§ 1981, 1982**

Waters alleges that ODOC employees blamed him "and other black inmates" for the "death of a white inmate." Compl. 5, ECF #1. Specifically, he contends that Lieutenant Yancey and Plante "used their power" to "punish [him] by putting [him] in" administrative segregation, removing him from his programs, and removing his wife from his visitor list. *Id.* He further alleges that Superintendent Premo and Assistant Superintendent Laney signed "two different things on" his administrative segregation papers. *Id.* Waters asserts that these actions violated 42 U.S.C. §§ 1981, 1982.

Section 1981 prohibits racial discrimination in the making and enforcement of contracts: "for purposes of this section, the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship." 42 U.S.C. § 1981. Section 1981 is violated if: (1) the plaintiff is a member of a racial minority; (2) the defendant intentionally discriminated against plaintiff because of his or her race; and (3) the discrimination involved the making or enforcing of a contract. *Allen v. U.S. Bancorp*, 264 F.Supp.2d 945, 948

(D. Or. Jan. 22, 2003). Section 1981 is not "a general proscription of racial discrimination . . . [but rather] expressly prohibits discrimination in the making and enforcement of contracts." *Patterson v. McLean Credit Union*, 491 U.S. 164, 176 (1989).

The Supreme Court broadened the scope of § 1981 claims in 1991, "to bring post formation conduct, including discriminatory termination, within the scope of § 1981." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 477 (2006). The Court explained that contractual obligations were "positively reinforced . . . [by] § 1981(b)'s reference to a 'contractual relationship.'" *Id.* Thus, "a plaintiff cannot state a claim under § 1981 unless he has (or would have) rights under [an] existing (or proposed) contract that he wishes 'to make [or] enforce.'" *Id.* at 479-80 (citing 42 U.S.C. § 1981(a)).

Section 1982 provides "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C.§ 1982.

Here, Waters has not presented any evidence of a contractual obligation between himself and defendants sufficient to state a claim under § 1981. Additionally, Waters has not established any property rights pursuant to a § 1982 claim. Thus, Waters has no valid claims under either § 1981 or § 1982.

### B. Civil Rights Conspiracy, 42 U.S.C §§ 1985, 1986

Waters alleges Lieutenant Yancey and Plante lied to Superintendent Premo and Assistant Superintendent Laney "to get them to place [him] in" administrative segregation "and remove [his] wife from [his] visiting list for no reason because all they had was hearsay." Compl. 5, ECF #1. He further contends his wife was removed from his visitor list because he "had been letting people know [he] was going to sue OSP, so they decided to use their power and punish

[him] by putting [him] in the hole." *Id*. In sum, Waters alleges that defendants abused their powers "with no evidence he ever done anything." *Id*. Waters claims these actions violated 42 U.S.C. §§ 1985, 1986.

Although not explicitly stated in Waters' pleadings, the court interprets Waters' claim to assert a violation of 42 U.S.C. § 1985(3)—the deprivation of rights or privileges. To state a cause of action under § 1985(3), a plaintiff must allege: (1) a conspiracy, (2) to deprive any person or class of persons of the equal protection of the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage, or deprivation of any right or privilege of a citizen of the United States. *United States Brotherhood of Carpenters and Joiners of America v. Scott*, 463 U.S. 825, 828-29 (1983); *Griffen v. Breckenridge*, 403 U.S. 88, 102-03 (1971); *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992). To recover damages under § 1985(3), a plaintiff must generally establish invidious discrimination. *Griffen*, 403 U.S. at 102. In other words, a plaintiff must identify a legally protected right and demonstrate that the deprivation of that right was motivated by racial or otherwise class-based animus. *Id*.

Here, Waters alleges that ODOC employees targeted "black inmates" as a result of a white inmate's death. Compl. 5, ECF #1. Waters states in his complaint he will provide "letters stating from other prisoners [he] had nothing to do with the death, but they don't care." *Id.* However, Waters has not provided any evidence, including those letters mentioned, that demonstrates there was a conspiracy to deprive him of any right or privilege. Additionally, Waters has not established that defendants' actions in this case were motivated by racial animus. Further, as outlined above, Waters' placement and duration in administrative segregation did not cause a personal injury, property damage, or deprivation of any right or privilege.

A claim under § 1986 is predicated on a violation of § 1985, which does not exist here. Thus, defendants' summary judgment motion is granted as to both Waters' § 1985 and § 1986 claims.

## VI. Mootness

In addition to lacking merit, Waters' requests for injunctive relief are moot. "[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983) (citing *Flast v. Cohen*, 392 U.S. 83, 94-101 (1968)). "This case-or-controversy limitation serves 'two complementary' purposes." *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 395-96 (1980) (quoting *Flast*, 392 U.S. at 95). It limits the business of federal courts to "questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process," and it defines the "role assigned to the judiciary in a tripartite allocation of power to assure that the federal courts will not intrude into areas committed to the other branches of government." *Id.* at 396.

The doctrine of mootness is "embedded in Article III's case and controversy requirement," and "requires that an actual, ongoing controversy exist at all stages of federal court proceedings." *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1086 (9th Cir. 2011). Mootness has two aspects: "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Geraghty*, 445 U.S. at 396 (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). "The basic question in determining mootness is whether there is a present controversy as to which effective relief can be granted." *Nw. Envtl. Def. Ctr. v. Gordon*, 849 F.2d 1241, 1244 (9th Cir. 1988). A case becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome" of the litigation.

*Pitts*, 653 F.3d at 1086 (citing *Powell*, 395 U.S. at 496). Further, when an inmate is transferred to another institution, his claim for declaratory and injunctive relief becomes moot to the extent that the claim challenges prison conditions at the prior facility. *Dilley v. Gunn*, 64 F.3d 1365, 1368 (9th Cir. 1995).

Waters seeks to (1) be removed from administrative segregation, (2) have his wife place back on his visiting list, and (3) be "placed back on all of his programs." Compl. 6, ECF #1. Defendants contend that because Waters has been removed from administrative segregation, his wife's visitation privileges have been restored, and he has been participating in programs, his requests are moot. Mot. Summ. J. 5, ECF #39. Indeed, because there is no longer a live case or controversy as to these requests for relief, they are moot.

## VII. Standing

Finally, to the extent Waters seeks to hold defendants liable for the death of another inmate, he lacks standing. Compl. 6, ECF #1. A plaintiff seeking judicial relief in federal court must have standing to maintain his cause of action. To satisfy Article III's standing requirements, a plaintiff must show (1) he has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975).

Here, Waters cannot hold defendants criminally liable for the death of another inmate, as only a district attorney may prosecute crimes. ORS 8.650; ORS 8.660(1) ("The district attorney

shall attend the terms of all courts having jurisdiction of public offenses within the district attorney's county, and, except as otherwise provided in this section, conduct, on behalf of the state, all prosecutions for such offenses therein."). Waters also cannot hold defendants civilly liable because there is no evidence in the record to suggest that Waters is the personal representative of the decedent. ORS 30.020(1). Thus, Waters lacks standing to challenge the wrongful death of a fellow inmate.

## ORDER

For the reasons stated above, defendants' motion for summary judgment (ECF #39) is GRANTED and this case is dismissed with prejudice. The court further certifies that any appeal from the order or judgment dismissing this case would be frivolous and not taken in good faith. *See* 28 U.S.C. § 1915(a)(3).

IT IS SO ORDERED.

DATED February 26, 2019.

/s/ Youlee Yim You

Youlee Yim You
United States Magistrate Judge